[No. A110441. First Dist., Div. Three. Apr. 6, 2006.]

HILLSBORO PROPERTIES et al., Plaintiffs and Appellants, v.
CITY OF ROHNERT PARK et al., Defendants and Respondents.

COUNSEL

David Spangenberg; Pacific Legal Foundation, R. S. Radford and Lawrence G. Salzman for Plaintiffs and Appellants.

McDonough Holland & Allen, Michelle Marchetta Kenyon and Gabrielle P. Whelan for Defendants and Respondents.

OPINION

**POLLAK, J.**—A property owner is prevented from charging increased rent by a rent control ordinance that is subsequently determined to be unconstitutional. Is the owner entitled to recover the lost rental income, either from its tenants or from the city that imposed the limit, if the ordinance did not deny the owner a fair return on its investment? We hold that it is not.

In 1987, the City of Rohnert Park (the city) passed a rent control ordinance that limited the amount by which a landlord of a mobilehome park could raise rents. Plaintiffs Hillsboro Properties and Goldstone Enterprises, Inc., doing business as Rancho Grande Mobilehome Park (collectively, Hillsboro) seek to recover, either from their tenants or from the city, rents in excess of the rent control ceiling for the period during which the ordinance, subsequently held to be unconstitutional, was in force. Hillsboro relies principally on *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761 [66 Cal.Rptr.2d 672, 941 P.2d 851] (*Kavanau*) in arguing that it is entitled to recover additional rents from its tenants, and on *Galland v. City of Clovis* (2001) 24 Cal.4th 1003 [103 Cal.Rptr.2d 711, 16 P.3d 130] (*Galland*) in seeking to recover directly from the city. In *Kavanau*, the court held that when a rent control law becomes confiscatory—i.e., denies the property owner a fair rate of return—a constitutional taking can be obviated by allowing the landlord to adjust future rents to compensate for prior enforcement of the

overreaching law. From 1988 through 1995, Hillsboro gave notice to its tenants of higher rents that it sought to impose, but could not because of the ordinance. In 1995, the city amended the ordinance to allow a landlord to raise rents above the rent control ceiling in order to recoup the cost of capital improvements, which the original measure did not permit. In 1996, a federal court determined that the ordinance as originally written was unconstitutional because it did not provide a fair return on capital improvements. In December 2002, the federal court held that the amended ordinance satisfied constitutional requirements. Beginning in August 2003, Hillsboro unsuccessfully attempted to apply to the rent board for a "*Kavanau* adjustment," but the city attorney refused to submit the application to the board. In September 2004, Hillsboro filed suit in the superior court for, among other things, inverse condemnation; a declaration that the ordinance had effected an unconstitutional taking; and a writ of mandate ordering the rent board to consider the application. The trial court sustained the city's demurrer to the complaint without leave to amend and this appeal followed.

BACKGROUND

*Legal framework*

■ There are two provisions in both the state and federal Constitutions that protect owners of private property from overly restrictive governmental regulation. "The due process clauses of the state and federal Constitutions guarantee property owners 'due process of law' when the state 'deprive[s] [them] of . . . property.' (Cal. Const., art. I, §§ 7, 15; U.S. Const., 14th Amend., § 1.) . . . [T]he takings clauses . . . guarantee property owners 'just compensation' when their property is 'taken for public use.' (Cal. Const., art. I, § 19; U.S. Const., 5th Amend.)" (*Kavanau, supra,* 16 Cal.4th at p. 770.) These provisions "prohibit government from depriving a person of property without due process of law. [Citations.] These provisions guarantee appropriate procedural protections [citation] and also place some substantive limitations on legislative measures [citations]. The latter guaranty—sometimes described as substantive due process—prevents government from enacting legislation that is 'arbitrary' or 'discriminatory' or lacks 'a reasonable relation to a proper legislative purpose.' [Citation.] [¶] In the context of price control, which includes rent control, courts generally find that a regulation bears 'a reasonable relation to a proper legislative purpose' so long as the law does not deprive investors of a 'fair return' and thereby become 'confiscatory.' " (*Id.* at p. 771.)

■ Government regulation may effect a taking of property if it "goes too far." (*Penna. Coal Co. v. Mahon* (1922) 260 U.S. 393, 415 [67 L.Ed. 322, 43 S.Ct. 158].) Such a regulatory taking entitles the property owner to "bring

an inverse condemnation action, and if it prevails, the regulatory agency must either withdraw the regulation or pay just compensation. [Citation.] Even if the agency withdraws the regulation, the property owner may have a right to just compensation for the temporary taking while the regulation was in effect." (*Kavanau, supra,* 16 Cal.4th at p. 773.)

 In *Kavanau* the Supreme Court examined a rent control ordinance enacted by the City of Santa Monica. That ordinance limited rent increases to no more than 12 percent in a given year. (*Kavanau, supra,* 16 Cal.4th at p. 770.) In a preceding action, the Court of Appeal held that the 12 percent limit violated Kavanau's right to due process, and Kavanau obtained a writ of mandate prohibiting the city from applying the limit to his property. (*Id.* at pp. 767, 777.) That holding was not challenged and Kavanau then brought a second action seeking damages from the city. (*Id.* at p. 779.) The Supreme Court found that Kavanau had failed to state a cause of action for inverse condemnation because there was no physical invasion of his property, and the regulation had not deprived him of substantially " 'all economically beneficial or productive use of' his property." (*Id.* at p. 780, quoting *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015 [120 L.Ed.2d 798, 112 S.Ct. 2886].) The court rejected Kavanau's argument that "because he lost rental income as a direct result of the Rent Board's unconstitutional application of its 12 percent limit, he has suffered a taking requiring just compensation." (*Kavanau, supra,* 16 Cal.4th at p. 781.) The court explained that Kavanau had a remedy available to him—an application to the rent board for a future increase in rents to cover the rental income lost while the unconstitutional provision was in effect—and therefore had not suffered a violation of his right to obtain a fair return on the value of his property. (*Id.* at pp. 782–783.) "[T]his remedy, as opposed to an award of damages against the Rent Board, places the cost of compensating Kavanau roughly on those tenants who benefited from unconstitutionally low rents." (*Id.* at p. 784.) The court concluded that a landowner could not state a cause of action for inverse condemnation if the owner could be compensated for the losses "flowing from the due process violation through an adjustment of future rents under the rent regulation process." (*Id.* at p. 767.)

In *Galland, supra,* 24 Cal.4th 1003, the Supreme Court considered whether a landlord could recover damages against a government agency under 42 United States Code section 1983 for imposition of a confiscatorily low rent ceiling. It concluded that "a *Kavanau* adjustment would preclude section 1983 damages if it is adequate to prevent constitutional injury by compensating for previous excessively low rent ceilings." (*Galland, supra,* at p. 1008.) The court stated, however, that "unreasonable costs, in the form of administrative and attorney fees, imposed on landlords seeking rent increases, may

themselves be the basis of a section 1983 claim . . . if either of two conditions is present: (1) the costs imposed are part of a government effort to deliberately flout established law, e.g., deliberately obstruct legitimate rent increases; or (2) the landlord suffers confiscation as a result of the imposition of such costs." (*Id.* at p. 1009.)

*Factual background*

Hillsboro's complaint, filed September 24, 2004, alleges as follows. In 1987, the city adopted Ordinance 494, "which established rent control for mobile home parks including Rancho Grande Mobilehome Park," which is owned by Hillsboro. Hillsboro believed the ordinance to be invalid "but did not collect annual rent increases over and above those authorized by Ordinance 494. In 1988, Hillsboro noticed a $15 rent increase over and above the rents allowed by the Ordinance." Hillsboro notified tenants that it would not seek to enforce the additional rent unless authorized to do so by a court or by the city. It notified tenants in their monthly bills "of the running total of noticed rent uncollected." The ordinance was amended on January 24, 1995. In 1996, a federal court entered judgment in Hillsboro's favor, ruling that the ordinance as originally drafted violated the Fourteenth Amendment to the United States Constitution because it did not provide a method for a landlord to collect a return on capital improvements. The city continued to enforce the ordinance while it appealed that decision. On July 7, 1997, the Ninth Circuit Court of Appeals held that the city's appeal was moot because the ordinance had been amended. On July 18, 2000, Hillsboro filed a second action in federal court seeking a declaration that the city was wrongfully enforcing the ordinance, to which the city responded that the 1995 amendments cured any constitutional defects in the ordinance. In December 2002, the federal court held that the 1995 amendments had corrected the constitutional defect in the ordinance and entered judgment in the city's favor.

The present complaint alleges that on August 15, 2003, "Hillsboro filed with the City of Rohnert Park an 'Application for a rent increase to compensate it for the City of Rohnert Park's unlawful 1988 rent roll back and the enforcement of unlawful rent control rents from January 16, 1988 through January 24, 1995.' The application sought a rent increase for the city's unlawfully imposed rent levels from 1988 through January 1995."

The correspondence between counsel for Hillsboro and the city attorney for Rohnert Park that preceded the litigation is incorporated as attachments to the complaint. On September 2, 2003, the city attorney wrote to Hillsboro, stating that the city had received Hillsboro's "application for a rent increase to compensate it for the City of Rohnert Park's unlawful 1988 rent roll back and the enforcement of unlawful rent control rents from January 16, 1988

through January 24, 1995." The city attorney stated that "the application will not be referred to the Mobile Home Rent Review Board . . . since the board has no jurisdiction to hear such an application . . . ." The letter set forth five reasons why the city attorney asserted the rent board did not have jurisdiction. First, the governing regulations "contemplate only two types of petitions for rent increases: (1) Petition for NOI [net operating income[1]] increase when annual adjustment 'does not provide a landlord with a fair and reasonable return . . .'; and (2) capital improvement pass-through . . . ."[2] Second, a request for a *Kavanau* adjustment is premature because "there has not been a determination by a court that, during a specific period of time, the city's mobile home rent review rent control system either effected an unconstitutional taking of private property or a violation of Section 1983 (42 U.S.C. § 1983). There has been no determination by any court that during the period 1988–1995, the operation of the city's mobile home rent review ordinance was confiscatory, as related to the (a) formulation of the 1988 roll back; (b) the operation of the annual general adjustment; or (c) the operation of any part of the ordinance other than its omission of a capital improvement pass through." Third, Hillsboro "waived its claim for damages at the conclusion of the" federal litigation. Fourth, the city attorney disagreed that the federal court "voided" the ordinance. Finally, the city attorney made an additional argument interpreting the federal court's decision and argued that it had not, in fact, found the ordinance to be "void."

In the following year, Hillsboro and the city attorney exchanged correspondence in which Hillsboro continued to insist that it was entitled to a prospective rent increase under *Kavanau* without having to show that it was entitled to either an NOI adjustment or a capital improvement pass-through, and the city attorney steadfastly refused to forward the request for a rent increase to the rent board, citing the reasons listed above

On September 24, 2004, Hillsboro filed its complaint, alleging a cause of action for inverse condemnation and seeking declaratory and injunctive relief

---

[1] An "NOI increase" refers to a net operating income increase, which is intended to compensate a landlord "when an annual adjustment does not provide a landlord with a fair and reasonable return." Net operating income is defined under the Rohnert Park Rent Board regulations as "gross income minus operating expenses." (City of Rohnert Park, Rent Appeals Bd. Rules and Regs. for ch. 9.70, Mobile Home Ord. § 5.01, subd. (E)(1).)

[2] The relevant ordinances provide that "A rent adjustment shall be approved in order to provide a just and reasonable return and maintain net operating income in accordance with" listed criteria; and that a rental adjustment is allowed for capital improvements according to rules and regulations established by the rental appeals board "defining a capital improvement, determining the amortization period allowed for the recovery of the capital improvement, determining a reasonable rate of return on the capital improvement, determining the impact of a capital improvement on rent once the cost of the capital improvement has been fully recovered, and any other factor or criteria relevant to such determinations." (Rohnert Park Mun. Code, §§ 9.70.060, 9.70.062.)

and damages. The complaint sought a writ of mandate directing the rent board to consider its application. The city demurred to the complaint and the trial court sustained the demurrer without leave to amend, ruling that "Each of plaintiffs' claims are precluded by applicable statute of limitations. Plaintiffs claims are either precluded by the five-year statute of limitations for takings claims (*Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 [16 Cal.Rptr.3d 404, 94 P.3d 538]) or the three-year statute of limitations for a challenge to an ordinance set out in Code of Civil Procedure section 338(a). [¶] Moreover, plaintiffs have not alleged any valid causes of action for a court-awarded '*Kavanau* increase.' The prerequisites for '*Kavanau*' damages are a formal adjudication that an ordinance deprived a property owner of a 'fair return.' [Citation.] That allegation has not been made—nor can plaintiff make this allegation because plaintiff has not exhausted all of its administrative remedies."

DISCUSSION

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58].) Courts must also consider judicially noticed matters. (*Ibid.*) In addition, we give the complaint a reasonable interpretation, and read it in context. (*Ibid.*) If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

*Statute of limitations*

■ The city argues, and the trial court held, that Hillsboro's complaint is barred by the statute of limitations. " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971–972 [114 Cal.Rptr.2d 748].) The city reasons that the complaint is a challenge to the facial constitutionality of the ordinance and as such had to be brought within five years from the date that the ordinance was passed. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 24 [32 Cal.Rptr.2d 244, 876 P.2d 1043] [five-year statute of limitations for regulatory takings challenges].) Certain of Hillsboro's causes of action unquestionably are facial attacks on the validity of the ordinance and are thus untimely. Others defy precise characterization.

The first four causes of action allege explicitly that as written the original ordinance is unconstitutional. These causes of action are thus barred. (*Hensler v. City of Glendale, supra,* 8 Cal.4th at p. 24.)[3] The fifth "cause of action," while couched in language that suggests it is a challenge to the ordinance as it was applied to Hillsboro, seeks a declaration that the ordinance "as amended provides no provision for payment of damages" and that the ordinance "as amended [is] invalid due to its failure to provide a remedy for damages." The sixth cause of action alleges inverse condemnation, and requests "just compensation for the taking of [Hillsboro's] property." The seventh cause of action alleges that the city has violated Hillsboro's right to due process and seeks a declaration "that by the city's deliberate non-actions and deliberate obstructions it has flouted the law in a deliberate manner and interfered with Hillsboro's property rights and rights entitling Hillsboro to an award of damages against the city." The eighth, ninth, and tenth causes of action purport to seek a writ of mandate in which the court will either "set the *Kavanau* rent increase according to proof," command the city "to formulate an adequate *Kavanau* adjustment remedy," or command the city "to perform its duty to hold a hearing upon Hillsboro's *Kavanau* application."

■ When these latter claims accrued is subject to question. If they are construed as facial challenges to the amended ordinance, the action accrued when the ordinance was amended in January 1995. In that case they are untimely. (*Hensler v. City of Glendale, supra,* 8 Cal.4th at p. 24.) On the other hand, the damage alleged by Hillsboro is that it was denied the ability to charge increased rents from 1988 through 1995. While that alleged damage occurred during those years, an action seeking relief from a regulatory taking cannot be brought until the responsible administrative body has denied relief to the property owner. "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (*Williamson Planning Comm'n v. Hamilton Bank* (1985) 473 U.S. 172, 186 [87 L.Ed.2d 126, 105 S.Ct. 3108].) "[U]ntil there has been a 'final, definitive position regarding' how the regulations will be applied to the land, a court cannot determine whether a compensable taking has occurred." (*Hensler v. City of Glendale, supra,* at p. 10.) Therefore, Hillsboro's claim for inverse condemnation may not have accrued until the city definitively rejected its attempt to obtain a *Kavanau* adjustment. We need not resolve the limitations issue, however, since the trial court correctly concluded that

---

[3] Although not raised by the parties or the trial court, we note that Hillsboro's claims are also barred to the extent that they challenge the constitutionality of the superceded ordinance. A party has "no legally cognizable interest in the constitutional validity of an obsolete statute. . . . [Such] challenges . . . are clearly moot." (*Citizens for Responsible Government v. Davidson* (10th Cir. 2000) 236 F.3d 1174, 1182.)

Hillsboro has not made the allegations necessary to support any form of relief. (See, e.g., *Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 962 [81 Cal.Rptr.2d 93, 968 P.2d 993] (*Santa Monica Beach*) ["we leave aside for the moment the problem of determining precisely when [petitioner's] inverse condemnation claim accrued"].)

*Taking and due process*

Despite the numerous causes of action that Hillsboro has pleaded, and the many subsidiary disputes between the parties concerning the proper role of the city attorney and concerning the procedures by which Hillsboro has pursued its claim, the crux of the dispute in this case comes down to a single issue: Is Hillsboro entitled to recover rental income (either from its tenants or from the city) that it was precluded from charging by a constitutionally defective rent control ordinance if it was not thereby deprived of a fair rate of return on its investment? Hillsboro's position is that its substantive due process rights were violated because it was denied additional rental income by application to it of "an unconstitutional, void, inoperative, and unenforceable law." "What is sought here," it explains, "is a means of recovering the damages incurred by Hillsboro when the city prohibited it from collecting its lawful, noticed rents. No determination of whether Hillsboro was denied a 'fair return' is necessary or proper to adjudicate that claim."

█ Hillsboro's position is based on a faulty premise. One is not denied substantive due process simply because one is affected by the application of a governmental promulgation that for some reason is found to be constitutionally defective. A denial of due process giving rise to a claim for relief arises only if application of the defective measure deprives one of a constitutionally protected right. (E.g., *Los Angeles v. Heller* (1986) 475 U.S. 796, 799 [89 L.Ed.2d 806, 106 S.Ct. 1571] [even if regulation authorized use of constitutionally excessive force, no cause of action under 42 U.S.C. § 1983 absent constitutional injury arising from actual use of such force]; *Carey v. Piphus* (1978) 435 U.S. 247, 253–254 [55 L.Ed.2d 252, 98 S.Ct. 1042] [recovery of substantial damages under 42 U.S.C. § 1983 requires proof not only of violation of constitutional right but that plaintiff's injury was caused by deprivation of constitutional right]; *Utah Animal Rights Coalition v. Salt Lake City Corp.* (10th Cir. 2004) 371 F.3d 1248, 1260–1261 [demonstrators not entitled to damages for delay in issuing permit even though ordinance governing issuance of permits was later declared to be unconstitutional]; *Diesel v. Town of Lewisboro* (2d Cir. 2000) 232 F.3d 92, 103–104 [no "cognizable constitutional injury" from denial of preferential police treatment, even if selective enforcement of law was based on constitutionally impermissible consideration]; *Reyes v. City of Lynchburg* (4th Cir. 2002) 300 F.3d 449, 455–457 [no per se cause of action under 42 U.S.C. § 1983 for

prosecution under ordinance later held to be unconstitutional]; *Richardson v. City of South Euclid* (6th Cir. 1990) 904 F.2d 1050, 1053–1055, cert. denied 498 U.S. 1032 [112 L.Ed.2d 681, 111 S.Ct. 691] (1991) [same].)

█ The constitutionally protected right that is involved in this case, as in *Kavanau*, is the right to receive a fair rate of return on one's property. Government regulation that deprives a property owner of a fair return violates the substantive due process rights of the owner and may constitute a taking which requires the payment of just compensation. (*Galland, supra,* 24 Cal.4th at p. 1024; *Santa Monica Beach, supra,* 19 Cal.4th at p. 967; *Kavanau, supra,* 16 Cal.4th at pp. 776–777.) Hillsboro's argument proceeds on the unarticulated premise that a property owner has the constitutionally protected right to charge as much as it wants for the use of its property, so that enforcement of an invalid rent ceiling deprives it of a constitutionally protected right. That is not what the federal or state Constitutions, or *Kavanau, Galland,* or any other case, protects.

█ "[O]rdinary rent control statutes are generally constitutionally permissible exercises of governmental authority." (*Santa Monica Beach, supra,* 19 Cal.4th at p. 962.) A constitutional injury does not occur simply because a government regulation limits the value of property. "A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project," but "[s]uch changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense." (*Danforth v. United States* (1939) 308 U.S. 271, 285 [84 L.Ed. 240, 60 S.Ct. 231].) Nonetheless, "both the enactment and administration of rent control laws are subject to a number of constitutional constraints. Particular decisions of public agencies charged with administering rent control may be deemed to be unconstitutional if as a result landlords are deprived of a fair rate of return." (*Santa Monica Beach, supra,* at pp. 962–963.) A rent control measure is "confiscatory" and its enforcement constitutes a violation of the substantive due process rights of the owner if it deprives a property owner of a fair return. (*Id.* at p. 967; *Kavanau, supra,* 16 Cal.4th at pp. 771–773.) "Fair return is the constitutional measuring stick by which every rent control board decision is evaluated." (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 288 [82 Cal.Rptr.2d 569].)

Denial of a fair return is thus the sine qua non for relief under *Kavanau*. (See, e.g., *Santa Monica Beach, supra,* 19 Cal.4th at p. 963 [landlord "contend[ed] that the Rent Control Law . . . deprived it of a fair return on its property"]; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 221 [130 Cal.Rptr.2d 564] [rejecting mobilehome park owner's assertion that maintenance of net operating income formula denied it

a fair rate of return]; *Morgan v. City of Chino* (2004) 115 Cal.App.4th 1192, 1200–1201 [9 Cal.Rptr.3d 784] ["due process merely requires that the agency take capital improvements into account when evaluating whether the owner is receiving a fair return on the property as a whole. If the existing rents are sufficient to provide the owner with a fair return on the overall project even after the capital improvement, then due process is satisfied"]; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 679 [209 Cal.Rptr. 682, 693 P.2d 261] [rent control regulation is facially invalid only if " 'its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties' "].)

Hillsboro contends it is entitled to a *"Kavanau* adjustment" regardless of whether it has been denied a fair rate of return. The opinions in *Kavanau* and *Galland* support no such view. The decision in *Kavanau* was reached on the premise, established in prior litigation, that the particular rent control provision there had deprived the property owner of a fair return. As the Supreme Court later put it, the court "decided [in *Kavanau*] that under rent control, adjustment of future rents was generally sufficient to compensate for prior rent ceilings that were set *so low as to be confiscatory*, and that such adjustments precluded a claim for inverse condemnation." (*Galland, supra*, 24 Cal.4th at p. 1008, italics added.)

■ The remedy envisioned in *Kavanau* is permission to increase rents prospectively to achieve a reasonable rate of return for the period during which an unconstitutionally restrictive ceiling was in effect. On a showing that the landlord has been denied a reasonable return, the rent board must, if it is to avoid a taking, approve an appropriate rent increase to compensate the landlord at a fiscally reasonable level. This approach was extended in *Galland* to preclude the right to recover damages from a public entity when a *Kavanau* adjustment is available to remedy the prior imposition of confiscatory rent levels. When a *Kavanau* adjustment is inadequate, "landlords seek[ing] section 1983 damages from allegedly confiscatory rent regulation . . . must show," first, "that a confiscatory rent ceiling or other rent regulation was imposed." (*Galland, supra*, 24 Cal.4th at p. 1025.) And, to repeat, "rate regulation is confiscatory" only if it "does not allow a just and reasonable rate to investors." (*Santa Monica Beach, supra*, 19 Cal.4th at p. 967.)

Hillsboro's failure to allege that the Rohnert Park ordinance deprived it of a fair rate of return on its investment thus defeats any possible right to recovery. If despite the invalidity of the ordinance the landlord received a fair return, there is no basis for a *"Kavanau* adjustment." The correspondence attached to the complaint indicates that Hillsboro persistently rejected the advice of the city attorney that in order to obtain a rental increase to compensate for rental income lost while the invalid measure was in effect,

Hillsboro should apply for either an "NOI increase" or for an adjustment to provide a fair return on capital improvements. As indicated above, an NOI increase is available if gross income on the property less operating expenses does not provide a fair return. A capital improvement pass-through is available to provide a fair return on additional investments in the property. Implicit in the city's rejection of Hillsboro's application is the assumption that the amended Rohnert Park ordinance permits upward rental adjustments in all circumstances in which a property owner potentially could be deprived of a fair rate of return. This assumption may be true by definition, but in all events we are unable to conceive of any circumstance in which an owner would not receive a fair return that does not come within the scope of the NOI increase or capital improvement provisions. We need not speculate as to whether there could be such a circumstance; it is sufficient to observe that the present complaint does not allege that any such circumstance exists here.

In the earlier federal action in which Hillsboro secured a judgment determining that the original Rohnert Park ordinance was unconstitutional, Hillsboro alleged that it "made capital improvements to its property." (*Hillsboro Properties v. City of Rohnert Park* (N.D.Cal., Mar. 29, 1996, No. 93 1723 FMS) 1996 U.S. Dist. LEXIS 3932, 1996 WL 161738, p. *1.) The reason for which the federal court held the ordinance unconstitutional was "because it [did] not allow mobilehome parkowners to collect any profit on new capital improvements." (*Id.* at p. *3.) However, the court noted that "[a]s a result of [the subsequent] amendments to the Municipal Code, the tenants of [Hillsboro] and the city have entered into a voluntary stipulation allowing [Hillsboro] to pass through to the tenants in the form of a limited duration rent increase the cost of those capital improvements, together with a profit on those new investments in the park." (*Ibid.*) While we are not permitted to take judicial notice of the truth of these facts, we do consider that in its present pleading Hillsboro no longer alleges that it has been denied the opportunity to recover a return on capital improvements, or that it has otherwise been denied a fair return on its investment. Instead, it wrongly disputes the need to do so.

Thus, we conclude that the trial court properly sustained the city's demurrer to each of the causes of action. To the extent that Hillsboro is challenging the city's refusal to authorize a "*Kavanau* adjustment," its claim fails because it does not allege the facts necessary to establish its right to such an adjustment, namely that enforcement of the ordinance has deprived it of a fair and reasonable rate of return on its investment. To the extent Hillsboro is seeking a writ of mandate to compel the city attorney to submit its application to the rent board, the trial court properly denied the petition because, like the complaint, the application did not allege that Hillsboro has been denied a fair rate of return. Without such an allegation, the city was under no obligation to consider the request for a *Kavanau* adjustment. And to the extent Hillsboro seeks to recover from the city for interfering with its

ability to recover additional rental income, the complaint is insufficient because of the same failure to allege that without the additional rent Hillsboro was deprived of a fair return.

Moreover, under the circumstances the trial court was justified in denying Hillsboro leave to amend.[4] "If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.) Here, leave to amend would be appropriate only if Hillsboro might be expected to add allegations denying the receipt of a fair return, but Hillsboro's position throughout has been that its right to recover is not dependant on the denial of a fair return. "[A]n abuse of discretion could be found [in denying leave to amend], absent an effective request for leave to amend in specified ways, only if a potentially effective amendment were both apparent and *consistent with the plaintiff's theory of the case.*" (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 [282 Cal.Rptr. 80], italics added.) Hillsboro has not argued that the trial court abused its discretion in denying leave to amend nor has it requested that the matter be remanded to permit leave to amend. Since the trial court correctly sustained the demurrer to the pleading before it and Hillsboro stands upon the sufficiency of that pleading, there is no need to provide leave to amend.

---

[4] The trial court denied Hillsboro the opportunity to amend its complaint because, it reasoned, "The prerequisites for '*Kavanau*' damages are a formal adjudication that an ordinance deprived a property owner of a 'fair return,' [Citation.] That allegation has not been made—nor can plaintiff make this allegation because plaintiff has not exhausted all of its administrative remedies." We do not believe the issue is one of exhaustion of remedies. The court's statement suggests that Hillsboro cannot obtain a *Kavanau* adjustment from the rent board until a court has found that the city imposed a confiscatory rent ceiling, and that a court may not adjudicate a claim that the ordinance is confiscatory until Hillsboro has sought an adjustment from the rent board. There is no such Catch-22. A judicial determination that a landlord has been deprived of a fair return is not a prerequisite to petitioning a local rent board for an adjustment. The local rent board is uniquely suited to the sort of factfinding inherent in determining whether a landlord has been deprived of a fair return on his or her investment. (See, e.g., *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1411–1412 [111 Cal.Rptr.2d 511] [case remanded to rent board to consider whether base rent should be adjusted]; *Carson Harbor Village, Ltd. v. City of Carson* (9th Cir. 2004) 353 F.3d 824, 826 [rent board weighed evidence and determined allowable rent increase on a petition to obtain a return on investment]; see also *Williamson Planning Comm'n v. Hamilton Bank, supra,* 473 U.S. at p. 191 [87 L.Ed.2d 126, 105 S.Ct. 3108].) Had Hillsboro sought an NOI increase or capital improvement adjustment based on the claim that enforcement of the rent control ceiling had deprived it of a fair return, and had the city attorney refused to permit the application to be considered because the denial of a fair return had not yet been adjudicated, the outcome here would have been different.

## Disposition

The judgment is affirmed.

Parrilli, Acting P. J., and Siggins, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 12, 2006, S143408.