[No. A130753. First Dist., Div. Five. Mar. 1, 2012.]

BESARO MOBILE HOME PARK, LLC, Plaintiff and Appellant, v. CITY OF FREMONT et al., Defendants and Respondents.

348

## COUNSEL

Law Office of Anthony C. Rodriguez and Anthony C. Rodriguez for Plaintiff and Appellant.

Harvey E. Levine, City Attorney, Prasanna W. Rasiah, Deputy City Attorney; Richards, Watson & Gershon and Rochelle Browne for Defendants and Respondents.

## OPINION

**NEEDHAM, J.**—Appellant Besaro Mobile Home Park, LLC, doing business as Besaro Mobile Home Park (Besaro), owns and operates a mobilehome park in respondent the City of Fremont (the City). In 2009, Besaro applied for a "major rent increase" under the City's mobilehome rent control ordinance. Although Besaro admitted that it was currently receiving a fair rate of return on its investment, it argued that the rents should be raised to the market rate because the market rate was not excessive, and rent control is constitutionally limited to preventing excessive rents. The application was denied following an administrative hearing and the superior court denied Besaro's petition for writ of administrative mandate challenging that decision. (Code Civ. Proc., § 1094.5.)

In this appeal, Besaro contends it was entitled to a major rent increase— from an average of approximately $670 per space per month to $895 per space per month—and that writ relief should have been granted by the superior court. It claims that the rent review officer who heard its application misconstrued the ordinance and failed to apply relevant criteria when considering the application for a rent increase. Besaro also complains that the denial of its request to raise rents violated several of its rights under the California Constitution. We disagree and affirm the judgment of the trial court denying writ relief.

### BACKGROUND

Besaro is a limited liability company that operates a 236-space mobilehome park located within the City. Its 32 members are descendents of the original developers of the park, which was built in the 1970's. There are two other mobilehome parks in the City, Niles Canyon and Southlake.

Like other municipalities in California, the City has adopted a rent control ordinance to address the unique attributes of mobilehome ownership and park management. (Mobile Home Space Rent Stabilization Ordinance (Ordinance)

(Fremont Mun. Code, tit. 3, ch. 13, § 3-13100 et seq.).)[1] The findings supporting the Ordinance include: "Mobile home owners, unlike apartment tenants or residents of other rental units, are in the unique position of having made a substantial investment in a residence for which space is rented or leased. Alternative sites for the relocation of mobile homes are difficult to find due to the shortage of vacant mobile home spaces, the restrictions on the age, size, or style of [the] mobile homes permitted in many mobile home parks and requirements relating to the installation of mobile homes, including permits, landscaping and site preparation. Additionally, the cost of moving a mobile home is substantial and the risk of damage in moving is significant." (§ 3-13101(c).)

■ Under the Ordinance, annual rent increases on spaces in mobilehome parks are limited to the greatest of (1) 3 percent; (2) $10 per month; or (3) 60 percent of the percentage change in the Consumer Price Index (CPI), not to exceed 6 percent. (§ 3-13104(a)(1)–(3).) Rent may be increased by up to 15 percent when a mobilehome is sold, and by any amount when the space changes hands due to abandonment or lawful eviction, or when a new or different mobilehome is placed on the space by a mobilehome dealer. (§§ 3-13104.1(a), (b), 3-13102.) These provisions are all subject to the qualification that the Ordinance "should not be interpreted or applied in a way that would deprive a park owner of the constitutionally protected right to receive a just and reasonable return on their property." (§ 3-13101(h).) A mobilehome park owner may apply for a "major rent increase" in excess of the increases specified in the Ordinance. (§§ 3-13106, 3-13107.) Applications are heard by administrative law judges assigned as hearing officers by the state Office of Administrative Hearings.

Though the Ordinance was enacted in 1987, Besaro was exempt from its provisions until 1995. In 2001, when its monthly rents averaged $382, Besaro sought a major rent increase because (1) its rents were lower than the Niles Canyon and Southlake parks when the Ordinance became applicable to Besaro in 1995, and (2) an increase was therefore needed to allow a fair return on its investment. The hearing officer awarded Besaro the full amount of the increase requested, which raised the average rents by $159.80 per space, to $507.92 per space (a 31 percent increase). This figure resulted in a 13.37 rate of return on Besaro's total original investment which, when adjusted for inflation, was $6,631,520.99.

In 2005, Besaro sued the City in federal district court, seeking the right to increase rents to market rate whenever a mobilehome was sold to a new owner and challenging the provision of the Ordinance that limited such increases to 15 percent. The district court granted the City's motion to

---

[1] Further statutory references are to title 3 of the Fremont Municipal Code unless otherwise indicated.

dismiss in a judgment entered October 19, 2006. The district court treated Besaro's claim as a facial challenge to the Ordinance under the takings and due process clauses of the Fourteenth Amendment and found those challenges to be time-barred. It also rejected Besaro's claim that it had a constitutional right to raise rents to reflect market conditions. The judgment of dismissal was entered "without prejudice to refiling an as-applied challenge [to the Ordinance] upon exhaustion of [s]tate remedies."

In January 2009, Besaro filed an application for a major rent increase with the City, seeking to raise rents from the then current average of $669 per month to the "market" rate of $895 per month. The petition stated the following facts in support of the requested increase: "There are no excessive rents at Besaro Mobile Home Park. The rents are substantially below market. Rents must be increased to at least $895 per month in order to be consistent with general market conditions and/or comparable spaces in comparable mobile home parks. Without rents that reflect general market conditions, the park[] owner is likely to close the park and/or convert it to another use. . . ." The tenants opposed the application through their homeowners association.

A hearing was held as required under the Ordinance. (§§ 3-13106(i), 3-13107.) Besaro did not take the position that the increase was necessary to provide a fair return on its investment in the property, but focused on the current market rents for mobilehome spaces and on the possibility that the park would close if the rents were not increased.

David Berretta, the managing member of Besaro, testified that an increase in rent was not needed to provide a fair return on the historical investment in the property. He indicated that the 29.93 acres of land on which the park was situated would be worth more as a residential development and calculated a current fair market value of between $60 and $75 million. Berretta testified that it did not make sense economically to operate the property as a mobilehome park, particularly with the undermarket rents, and that he was currently exploring other uses. Assuming Besaro obtained the rent increase, the park might stay open another three to five years before being put to another use.

Gerald Taylor, a certified appraiser specializing in mobilehome parks, conducted a survey of market rents for Besaro and concluded that the current market rate for spaces in the Besaro park (i.e., the price that could be obtained if rent control did not apply) was $895 per month. The actual average rent at Besaro was $669, not including water, trash and sewage. Market rents for the two other mobilehome parks in Fremont, Niles Canyon and Southlake, were $875 and $980, respectively. However, due to rent control, the average rent in those parks was not the market rate. The average

rent at Niles Canyon was $701 and the average rent at Southlake was $782, not including water, trash and sewage. Taylor considered Southlake to be a more desirable park than either Besaro or Niles Canyon, and considered Besaro to be slightly superior to Niles Canyon.

Dr. Richard Fabrikant, an economist retained by Besaro, opined that $895 per month was a fair market rent for the spaces in that park. In reaching this conclusion, he relied on the cost of other types of housing, such as apartments, condominiums and single-family homes in the area. Dr. Fabrikant estimated that under current economic conditions, a fair rate of annual return on the investment in Besaro would be 8.16 percent. Assuming that the fair market value of the land was $68 million, an annual net operating income of $5.4 million would be required for the owners to make an 8 percent return on the value of the property. The current net operating income on the property (the income earned on the property less expenses) was about $1.2 million.

Based on these figures, Dr. Fabrikant concluded that the rate of return on the investment was only 1.7 percent ($1.2 million as a percentage of $68 million). A rent increase to the market value of $895 a month would not bring the rate of return up to 8.1 percent; to reach this level, rents would have to average $2,155 per month when the operating expenses were factored in. Thus, according to Dr. Fabrikant, it was not possible to get a fair return on the value of the underlying land if it continued to be used as a mobilehome park.

David Beccaria, a real estate appraiser retained by the tenants at Besaro, agreed with Gerald Taylor that $895 was a fair estimate of the market rate rent for spaces in the park. But the actual average for existing rents for comparable mobilehome spaces in Fremont and neighboring cities was $720, a figure that reflected the various rent control laws and policies. For every $100 increase in monthly rent, the equity in the mobilehome itself (owned by the tenant) went down about $10,000.

The tenants also presented the report and testimony of Dr. Kenneth Baar, an attorney and urban planner who consults extensively on housing policy and rent control issues. In Dr. Baar's opinion, it was not appropriate to look solely to properties rented at the market rate when calculating what constitutes a fair rent. Addressing Besaro's claim that rent control is designed to restore free market conditions, Dr. Baar stated in his report, "Apart from the findings in the Fremont ordinance, it is generally recognized that 'market' rents for mobilehome spaces in urban areas of California are not the outcome of a 'competitive housing market.' Instead, they are the outcome of special circumstances of mobilehome park space rentals." The report also notes that land use regulations effectively prohibited the creation of new mobilehome

parks, and mobilehomes are virtually impossible to move, creating an imbalance of power in favor of park owners.

Turning to the question of what constitutes a fair return for a mobilehome park owner under rent control, Dr. Baar indicated that two methods were used. The first involves allowing increases sufficient to maintain the park's operating income (gross income less expenses) as of a certain base date, adjusted for inflation as calculated by the CPI. Besaro's annual net operating income since the 2001 major rent increase had grown by 32 percent (from $886,634 in 2001 to $1,218,787.83 in 2008), whereas the CPI had increased only 23.6 percent for the same period.

The second method for calculating a fair return is to look to the rate of return on the actual investment in the property, which, in the case of Besaro, is $8,094,444 when adjusted for inflation. Dr. Baar noted that with a net operating income of $1,218,787.83, Besaro was earning a 15.1 percent rate of return, an amount higher than typical capitalization rates on similar investments. This 15.1 percent would be even higher under other methods of calculation, which use the *depreciated* purchase price as the investment base and thus result in a higher rate of return. (See, e.g., *Westwinds Mobile Home Park v. Mobilehome Park Rental Review Bd.* (1994) 30 Cal.App.4th 84, 91–92 [35 Cal.Rptr.2d 315].)

Dr. Baar was critical of Dr. Fabrikant's approach for calculating a return on the property based on an alleged current value of $68 million, rather than the amount of Besaro's historical investment. Calculating a rate of return based on a property's value is circular in any case because value is determined by the income it could earn; Dr. Baar suggested that Dr. Fabrikant was going even further afield by basing the value on the assumption the property would be put to a totally different and more lucrative use. Dr. Baar emphasized that the fair return requirement is designed to prevent confiscation, not to give the owner the benefit of another more profitable enterprise that it has not actually implemented.

Based on this evidence, the hearing officer denied Besaro's request for a major rent increase. "Petitioner/Owner has not met its burden of proof that the major rent increase petition is reasonable. There have been no unavoidable increases in maintenance and operating expenses. There has been no substantial rehabilitation or addition of capital improvements. The rent history demonstrates that owner is receiving a fair rent. There is no increase or reduction of housing services and the existing space rents for comparable mobile home spaces is basically the same as that for Besaro . . . . There has been no decrease in net operating income. Owner is receiving a fair return on the property based on its use as a mobile home park."

Besaro sought judicial review of this administrative decision by filing a petition for writ of mandate under Code of Civil Procedure section 1094.5 in the superior court. The court denied the petition. Besaro now appeals, arguing that the denial of a major rent increase was contrary to the Ordinance and violated its rights under the California Constitution. Besaro does not raise any federal constitutional claims in this proceeding, having explicitly stated in its opening brief that it is reserving any such claims for litigation in federal court. (See *England v. Medical Examiners* (1964) 375 U.S. 411, 420–421 [11 L.Ed.2d 440, 84 S.Ct. 461]; *Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 646 [43 Cal.Rptr.3d 434].)

## DISCUSSION

### I. Standard and Scope of Review

■ An aggrieved party may seek judicial review of an administrative rent control decision by filing a petition for writ of mandate in the superior court. (Code Civ. Proc., § 1094.5; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 216 [130 Cal.Rptr.2d 564] (*MHC*).) "The inquiry in such a case shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

In an appeal from a judgment denying the writ, we focus upon the decision of the rent control agency rather than the superior court, with the burden being on the appellant to prove the decision was unreasonable or unlawful. (*MHC, supra,* 106 Cal.App.4th at p. 218; *Stardust Mobile Estates, LLC v. City of San Buenaventura* (2007) 147 Cal.App.4th 1170, 1180 [55 Cal.Rptr.3d 218] (*Stardust*).) We uphold the agency's factual findings if supported by substantial evidence, indulging in the presumption that the record supports the agency's findings of fact. (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 287 [82 Cal.Rptr.2d 569].) The interpretation of a rent control ordinance is a matter for our independent review, with deference given to the agency's interpretation. (*MHC, supra,* at p. 219.) The constitutionality of an ordinance as applied is reviewed de novo when the underlying facts are undisputed. (*Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 204 [111 Cal.Rptr.3d 775].)

## II.   Alleged Errors Under the Ordinance

Besaro argues that the superior court should have granted the writ because (1) the hearing officer who considered its petition limited her analysis of the requested rent increase to "non-exclusive" factors enumerated in the Ordinance, even though the Ordinance does not limit the determination of a reasonable rent to those factors, and (2) the hearing officer found that Besaro did not present evidence of rents at comparable mobilehome parks, even though it had. We find no abuse of discretion. (Code Civ. Proc., § 1094.5.)

As relevant here, section 3-13109 provides: "In evaluating a major rent increase proposed by the park owner, the following factors should be considered: [¶] (1) Unavoidable increases in maintenance and operating expenses . . . . [¶] (2) The substantial rehabilitation or the addition of capital improvements by the park owner . . . . [¶] (3) The rental history of the affected mobile home spaces and the mobile home park, for the immediately preceding thirty-six months . . . . [¶] (4) The physical condition of the affected mobile home spaces . . . . [¶] (5) Any increase or reduction of housing services since the last rent increase. [¶] (6) Existing space rents for comparable mobile home . . . parks. [¶] (7) A decrease in net operating income. [¶] (8) A fair return on the property prorated among the mobile home spaces of the mobile home park. [¶] (9) Other financial information that the mobile home park owner is willing to provide."

The hearing officer issued a four-page, single-spaced written decision denying Besaro's application, which concluded: "A major rent increase must be based on one of the factors set forth in Ordinance section 3-13109. . . . [¶] No evidence was presented under any of the factors listed in the ordinance that would establish that a rent increase to $895 would be justified." The decision notes that Besaro had petitioned for a major rent increase in 2001 to achieve a fair rate of return on its investment, and that that petition had been granted. Addressing Besaro's evidence of market rate rents in other parks, the decision states that the type of comparable rents that would support a major increase were those that existed under rent control. The decision specifically rejects Besaro's argument that rents should be increased because the cost of living in a mobilehome was currently less than in other types of housing, as well as its argument that an increase was warranted because the land could be converted to a more profitable use.

Besaro argues that the hearing officer did not consider evidence that was relevant to the calculation of reasonable rent but fell outside the factors listed in section 3-13109. The only such evidence identified by Besaro is the testimony by its principal, David Berretta, that it would withdraw from the mobilehome market and convert the property to a more profitable use if rents

were not increased. Besaro notes that the "Findings" section of the Ordinance refers to a policy within the City's general plan to " 'preserve the existing availability and affordability of mobile home sites' " (§ 3-13101(i)), implicitly suggesting that this policy would be defeated if the denial of a rent increase prompted Besaro to go out of the mobilehome park business.

■ It is clear from the written decision that the hearing officer did not fail to consider evidence that the property might be more profitable if used for another purpose; she simply did not believe that a park owner earning a fair return on its investment (as Besaro admittedly was) could properly rely on some hypothetical higher use of the property as a basis for increasing that return outside the ordinary rent control provisions. This was a reasonable conclusion. A property's potential to generate more income if converted into single-family homes or some other type of housing is not particularly useful in determining the fair rent for spaces so long as it is used as a mobilehome park. (See *Palos Verdes Shores Mobile Estates, Ltd. v. City of Los Angeles* (1983) 142 Cal.App.3d 362, 370 [190 Cal.Rptr. 866] [rent control ordinance passes constitutional muster if it allows a landlord to earn a fair return on the investment; it did not entitle landlord to a return based on the present fair value of the property].) Moreover, Besaro's principal testified that even if the requested rent increase were granted, it was still likely the park would be closed or converted within three to five years. Thus, while granting the rent increase would have put more money in Besaro's coffers during this interim period, it would not have advanced the City policy of keeping mobilehome spaces available to renters. The hearing officer did not abuse her discretion by subtracting this factor from the equation. (*Stardust, supra*, 147 Cal.App.4th at p. 1180.)

Besaro argues that the hearing officer improperly rejected evidence showing that the market rents in comparable mobilehome parks were significantly higher than the average actual rent at Besaro. We do not agree. Besaro's evidence focused on market rate rents, i.e., the rents for spaces that had become available outside of rent control. Dr. Baar explained that an evaluation of fair rent under a rent control statute should not look solely to market rate rents unaffected by rent control. The hearing officer was entitled to credit Dr. Baar's testimony and consider the actual average rents at comparable mobilehome parks, rather than market rate rents alone, and to reject the market rate comparables as a basis for increasing the rent to the amount requested. Substantial evidence supported the conclusion that the comparables offered by Besaro did not justify the rent increase. (*Stardust, supra*, 147 Cal.App.4th at p. 1180.)

■ The Ordinance sets a very specific structure for regulating the rents at mobilehome parks and calculating annual increases. It allows a park owner to

petition for a major rent increase to ensure the fair rate of return that is constitutionally required, but it does not purport to proscribe only rents that fall above the market rate, as Besaro suggests. Besaro has failed to carry its burden of showing that the hearing officer's construction of the Ordinance was unreasonable or unlawful, or that her decision amounted to an abuse of discretion. (See Code Civ. Proc., § 1094.5, subd. (b); *MHC, supra*, 106 Cal.App.4th at pp. 225–226.)

### III. State Constitutional Claims

Besaro argues that the denial of its petition for a major rent increase violated several provisions of the state Constitution: (1) the right to due process, which prohibits the government from depriving a person of private property without due process of law (Cal. Const., art. I, § 7); (2) the "takings" clause, which prohibits the government from taking private property without just compensation (Cal. Const., art. I, § 19); (3) the prohibition against making a gift of public money for a private purpose (Cal. Const., art. XVI, § 6); and (4) the right to equal protection under the law (Cal. Const., art. I, § 7). Besaro also contends it had a constitutional right to increase base rents under the decision in *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1415–1416 [111 Cal.Rptr.2d 511] (*Concord*), and suggests that the concept of "fair return" expands rent control beyond its constitutionally permissible boundaries. We reject these claims.

■ A municipality may use its police powers to adopt a rent control ordinance when the provisions of that ordinance "are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001].) "In the context of price control, which includes rent control, courts generally find that a regulation bears 'a reasonable relation to a proper legislative purpose' so long as the law does not deprive investors of a 'fair return' and thereby become 'confiscatory.' " (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 771 [66 Cal.Rptr.2d 672, 941 P.2d 851] (*Kavanau*).) The constitutionally protected right in this case is the right to receive a fair return on one's property. (*Hillsboro Properties v. City of Rohnert Park* (2006) 138 Cal.App.4th 379, 391 [41 Cal.Rptr.3d 441] (*Hillsboro*).) With these principles in mind, we turn to the specifics of Besaro's constitutional claims.

#### A. *Due Process*

■ The state due process clause guarantees a landlord the right to a fair return. (*Kavanau, supra*, 16 Cal.4th at p. 771.) When considering whether a rent control statute violates substantive due process, "a 'court must determine

whether the [statute] may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection for the relevant public interests, both existing and foreseeable.' " (*Kavanau, supra,* 16 Cal.4th at p. 772.) The essential inquiry is "whether the regulatory scheme's *result* is just and reasonable" and regulated rents must fall within "a 'broad zone of reasonableness.' " (*Id.* at pp. 778–779.) " 'Fair return is the constitutional measuring stick by which every rent control board decision is evaluated.' " (*Hillsboro, supra,* 138 Cal.App.4th at p. 391.)

Besaro does not claim that it has been denied a fair return on its investment. It argues instead that because rent control is designed to prevent excessive rents, it may not be used to stop owners from charging the market rate when the market rate is not "excessive." Besaro reasons that an average rent of $895 (the amount sought in its petition for a major rent increase) is not excessive because that is an amount a willing renter not currently protected by rent control would be willing to pay.

■ The circularity of this argument is its downfall. Besaro begins with the premise that because it could obtain a rent of $895 a month in the current market, that amount cannot be considered "excessive" for purposes of rent control. But the City enacted the Ordinance precisely because the circumstances specific to mobilehome ownership created an imbalance between landlords and tenants in that sector of the housing market, making mobilehome owners captive to rent increases. These circumstances include (1) the significant investment made by mobilehome owners in their mobilehomes; (2) the relative immobility of mobilehomes; (3) the scarcity of mobilehome spaces; and (4) the necessity of selling a mobilehome before moving into a different type of housing. (§ 3-13101; see also *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1009 [103 Cal.Rptr.2d 711, 16 P.3d 130] (*Galland*); *Stardust, supra,* 147 Cal.App.4th at p. 1180.) Due process is not offended by a rent control statute designed to protect tenants from asymmetries in bargaining power so long as the property owner can earn a fair return; to conclude otherwise would be to render most rent control statutes virtually meaningless.

■ Besaro suggests that the conditions leading to the enactment of the Ordinance no longer exist, because (1) the evidence showed an increase of mobilehome spaces currently available for occupancy; (2) there was no evidence of above-market rents at any of the three mobilehome parks in Fremont; (3) the monthly cost of purchasing a mobilehome and renting a space is now cheaper than renting a comparable apartment; (4) a fair rent can now be established under the Ordinance; and (5) Besaro planned to allow some tenants to obtain a rent credit if the proposed increase caused their rent to exceed one-third of their monthly income. "The notion that a court may

invalidate legislation that it finds, after a trial, to have failed to live up to expectations, is indeed novel. In our constitutional system, it is generally assumed that only the legislative body that enacted the statute may exercise a power of repeal if that statute fails to meet legislative expectations." (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 963–964 [81 Cal.Rptr.2d 93, 968 P.2d 993]; see also *id.* at pp. 957–960 [rejecting claim that rent control statute violated takings clause because it had not sufficiently benefitted the demographic groups it was designed to assist].) "[W]ith rent control, as with most other such social and economic legislation, we leave [it] to legislative bodies rather than the courts to evaluate whether the legislation has fallen so far short of its goals as to warrant repeal or amendment." (19 Cal.4th at p. 974.)

### B. *Takings Clause*

■ We similarly reject Besaro's claim under the takings clause, which, like the due process clause, protects a property owner's right to earn a fair return on the investment. (*Hillsboro, supra*, 138 Cal.App.4th at p. 391; see also *Galland, supra*, 24 Cal.4th at p. 1024 [price regulation causing confiscation can be "designated interchangeably" as either a taking or a violation of due process].) "When a regulation does not result in a physical invasion [of property] and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the 'factors' the high court discussed in *Penn Central* [*Transp. Co. v. New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646]] and subsequent cases. *Penn Central* emphasized three factors in particular: (1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " (*Kavanau, supra*, 16 Cal.4th at p. 775.)

■ Here, the Ordinance has not had a confiscatory effect because Besaro is earning a fair return on its investment. Consequently, the application of the Ordinance does not violate Besaro's expectation of the right to use its property in a manner yielding a fair return. Besaro cannot claim a "reasonable" expectation in greater profits in light of the Ordinance itself and the heavily regulated nature of mobilehome occupancy. (See, e.g., Health & Saf. Code, § 18000 et seq.; Civ. Code, § 798 et seq.) The City's decision to enact the Ordinance serves a legitimate government purpose of protecting renters in a captive market from excessive rent increases. None of these factors points to a "taking," be it a "private" taking or a "regulatory" taking.

## C. *Gift of Public Money*

We reject Besaro's argument that the rent control ordinance effectuates an improper gift of public money to a private individual. The core of Besaro's complaint is that it has been prevented from charging its tenants market rate rent; no "gift" or other transfer of public money is involved.

## D. *Equal Protection*

Besaro claims an equal protection violation because its average rents are less than those in Niles Canyon and Southlake, the two other mobilehome parks in Fremont. It claims that this disparity shows that similarly situated landowners have been treated differently under the law.

We do not accept that Besaro has been treated differently than the two other parks. The rent increase provisions in the Ordinance apply to all Fremont mobilehome parks. The difference in rents between the three parks appears to be the product of circumstances as to which they are not similarly situated: the nature of the spaces, the level of rents when the base rates for rent control purposes were established, and the turnover rates within the parks (which allow rent increases for those spaces). Moreover, the higher rents at Niles Canyon and Southlake do not necessarily show that those parks are earning a greater return on their investment than Besaro; it may well be that they are earning less when expenses are taken into account. (See *Cotati Alliance for Better Housing v. City of Cotati* (1983) 148 Cal.App.3d 280, 291–292 [195 Cal.Rptr. 825] (*Cotati*) [rent ceilings resulting in disparate amounts of rent for identical units did not show disparate treatment where ordinance guaranteed all landlords a fair return and rents did not necessarily reflect amount of return].)

Even if we assume the three parks are similarly situated, equal protection is not denied simply because some landlords may receive rents different from those received by other landlords. (*Pennell v. City of San Jose* (1986) 42 Cal.3d 365, 373 [228 Cal.Rptr. 726, 721 P.2d 1111] [ordinance requiring rent board to consider hardship on the tenant in determining whether to allow rent increase in excess of 8 percent did not violate equal protection by treating landlords with "hardship" tenants differently than others].) "Where there is no suspect classification, and purely economic interests are involved, a municipality may impose any distinction which bears some 'rational relationship' to a legitimate public purpose. [Citation.] Courts consistently defer to legislative determinations as to the desirability of such distinctions. [Citation.] The ordinance will be upheld so long as the issue is ' "at least debatable." ' " (*Cotati, supra*, 148 Cal.App.3d at pp. 291–292.)

The Ordinance in this case allows specified annual rent increases, subject to the requirement that the park owner must be allowed to earn a fair return

on its investment. It provides a vehicle for the park owner to obtain a major rent increase in the event it is not earning a fair return. This system protects both the park owners and the tenants, balancing the rights of each. It is " ' "at least debatable" ' " that this system bears a rational relationship to a public purpose. (*Cotati, supra*, 148 Cal.App.3d at p. 292.) The focus on a park owner's fair return, rather than current fair market rents, "ensures that inflationary factors will not be built into a rent control ordinance's rent ceiling adjustment mechanism, and thereby ensures the integrity of the entire rent control scheme. This court must defer to the local governmental determination as to the desirability of any consequential disparate treatment of landlords." (*Ibid.*)

### E.   *Right to Adjustment in Base Rent*

Besaro claims it had a constitutional right to adjust its base rents to reflect market conditions. It relies primarily on *Concord, supra*, 91 Cal.App.4th 1407, 1415, in which a mobilehome park owner sought an increase in the base year rents set under a rent control ordinance. We are not persuaded.

The court in *Concord* found that the city in that case should have granted the mobilehome park owner's requested rent increase because the evidence showed that the park's rents had been much lower than comparable parks during the year in which base rents were set: "While the City's ordinance properly seeks to maintain the same rate of return which property owners experienced prior to the enactment of rent control with adjustments for inflation, a property owner must be permitted to *start* rent calculations with a base date rent similar to comparable properties." (*Concord, supra*, 91 Cal.App.4th at pp. 1419–1420, italics added.)

Here, Besaro petitioned the City for a rent increase in 2001 based on the low level of rents it was charging in its base year, relative to the rents in the Southlake and Niles Canyon parks. The hearing officer granted Besaro the full amount of its requested increase, which provided it with a fair rate of return. By the time Besaro filed the instant petition for a major rent increase, it was earning an even greater return on its investment. It is not constitutionally entitled to charge current market rates that exceed the amount necessary for a fair return, and nothing in *Concord* stands for the contrary.

### F.   *Fair Return Issues*

Besaro argues that because courts have approved different methods for calculating a fair rate of return, there is "[no] nexus between the rents produced by those fair return formulas and the determination of whether the resulting rents are excessive." The fair return standard for assessing the

constitutionality of a rent control statute has been applied time and again and Besaro cites no authority for the proposition that it has a constitutionally protected right to charge market rent. (See, e.g., *Kavanau, supra,* 16 Cal.4th at p. 771; *Hillsboro, supra,* 138 Cal.App.4th at p. 391.) We emphasize again that Besaro does not claim it has been denied a fair return.

Finally, we reject Besaro's claim that the City hearing officer violated an (unspecified) provision of the state Constitution by failing to consider whether the current rent structure will encourage the members of Besaro to sell the property. Besaro cites no authority for its assertion that the hearing officer was constitutionally required to grant a major rent increase if it appeared the park might otherwise close.

Given our resolution of these issues, we do not address the City's claim that Besaro's constitutional arguments present a facial challenge to the Ordinance, which is barred by the statute of limitations and by the collateral estoppel effect of prior proceedings in federal court.

## DISPOSITION

The judgment of the superior court (order denying petition for writ of mandate under Code Civ. Proc., § 1094.5) is affirmed. Costs are awarded to respondent.

Jones, P. J., and Bruinier, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 27, 2012, S201917.