Filed 7/7/15  Rancho de Calistoga v. City of Calistoga CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RANCHO DE CALISTOGA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF CALISTOGA et al.,<br><br>        Defendants and Respondents,<br><br>TENANTS RESIDING AT RANCHO DE CALISTOGA MOBILEHOME PARK,<br><br>        Real Parties in Interest and<br>        Respondents. | A138301<br><br>(Napa County<br>Super. Ct. No. 26-57311) |

A mobile home park owner obtained an administrative ruling increasing the rent it may charge under a local rent control ordinance to an amount necessary to provide a fair return on its investment.  The park owner challenges that ruling, contending it has a state constitutional right to increase the rent to a rate higher than that necessary to provide a fair return.  We conclude the administrative ruling did not violate the park owner's constitutional rights.  We therefore affirm the trial court's denial of the park owner's petition for writ of administrative mandate.  (Code Civ. Proc., § 1094.5.)

## I.  BACKGROUND

Appellant Rancho de Calistoga, a general partnership, dba Rancho de Calistoga Mobilehome Park (Rancho), owns and operates a 184-space mobile home park in respondent City of Calistoga (City).

1

Like other municipalities in California, City has adopted a rent control ordinance to address the unique attributes of mobile home ownership and park management. (Mobile Home Park Rent Stabilization Ordinance (Ordinance No. 644), Calistoga Mun. Code, ch. 2.22, § 2.22.010 et seq. (ordinance).)[1]  The findings supporting the ordinance include:  "Residents of mobile home parks, unlike apartment tenants or residents of other rental properties, are in a unique position in that they have made a substantial investment in a residence for which space is rented or leased.  The removal or relocation of a mobile home from a park space is generally accomplished at substantial cost.  Such removal or relocation may cause extensive damage to the mobile home."  (§ 2.22.010, subd. (B)(1).)

The ordinance sets a "base rent" for each mobile home space and places limits on the ability of a park owner to increase the rent over time.  (§§ 2.22.040, 2.22.070.)  The ordinance specifies that, in general, the base rent for a mobile home space is the rent in effect for that space on July 1, 1993.  (§ 2.22.040, subd. (A)(1).)  A park owner may seek an adjustment to the base rent by following procedures specified in the ordinance. (§§ 2.22.040, subd. (B), 2.22.150.)  In 1995, in response to a petition by Rancho, City's hearing officer (a retired judge) granted a $50 upward adjustment in the base rent for all spaces at the park.  The hearing officer concluded this increase was necessary so the base date rent would reflect "general market conditions" existing on the base date (i.e., July 1993), and thus would provide a fair return.

A park owner may increase the rent every year by the lesser of (1) 100 percent of the percentage change in the Consumer Price Index or (2) six percent of the base rent. (§ 2.22.070, subd. (A).)  (Prior to seeking the larger rent increase at issue in this case, Rancho regularly took this automatic annual increase.)  If a park owner seeks to make a larger increase, the ordinance provides for an arbitration hearing (§§ 2.22.070, subds. (C), (D), 2.22.090, subd. (G)), and specifies the arbitrator is to determine "whether space rent increases proposed or imposed by the park owner are reasonable based upon the

_____

[1] All section references are to chapter 2.22 of the Calistoga Municipal Code unless otherwise stated.

circumstances and all the provisions of this chapter [(i.e., the ordinance)]." (§ 2.22.110, subd. (A).)

After hearing the evidence, the arbitrator has the authority to "reduce the proposed rent increases . . . to a figure determined . . . to be a fair return." (§ 2.22.070, subd. (E).) The ordinance specifies a formula, based on the park owner's net operating income (NOI), that presumptively yields a fair return, but the hearing officer must assess whether the NOI approach in fact yields a fair return. (§ 2.22.110, subd. (C)(1).) The ordinance emphasizes the importance of ensuring a park owner receives a fair return. The ordinance states: "Notwithstanding any other provision to the contrary, no provision of this chapter [the ordinance] shall be applied to prohibit the granting of a rent increase that is demonstrated to be necessary to provide a park owner with a fair and reasonable return." (§ 2.22.110, subd. (F).)

In July 2010, Rancho sought to increase the rent at each space in the park to $625 per month, and issued a notice of the increase to park residents and to City. (See § 2.22.080, subds. (B)-(C).) At that time, the average rent at the park was $471.39 per month. Pursuant to the ordinance's dispute resolution provisions, an arbitrator (a different retired judge) held an evidentiary hearing on the proposed increase, at which Rancho and the park residents presented testimony and documentary evidence. (See § 2.22.090, subds. (F)-(G).)

John Neet, a real estate appraiser specializing in mobile home parks and retained by Rancho, conducted surveys of rents and transactions at other mobile home parks. Neet concluded the market rent for spaces in the Rancho park (i.e., the price that could be obtained if rent control did not apply) was $625 per month in 2009 and $650 per month in 2011. Neet calculated the market value of the park to be $11.85 million; he concluded that, if the market rent of $650 per month were charged, the market value would be $16.58 million.

Richard Fabrikant, an economist retained by Rancho, opined that $625 per month was not an "excessive" rent and that Rancho did not have monopoly power in the rental market. In reaching these conclusions, he relied on the cost of other types of housing,

principally apartments, in the area. Fabrikant did not opine as to whether Rancho would be denied a fair return on its investment if it could not increase its rents to $625 per month. Fabrikant stated that, because no information about the park owner's initial investment (such as the cost of acquiring the land or the cost of construction) was available, he could not conduct a fair-return analysis.

Dean Moser, the general manager of the property management company that operates the park, testified he has been unable to locate documents establishing the amount of the original investment in the park. Moser testified the owners of the Rancho de Calistoga park also built several other parks in Napa and Sonoma Counties. Moser testified the NOI calculation in the ordinance restricted Rancho's ability to pass expenditures through to tenants.

Kenneth Baar, an attorney and urban planner, testified as an expert for the park tenants. Baar concluded, based on his review of Rancho's income and expense statements, that Rancho was earning a fair rate of return under the NOI formula set forth in the ordinance. Baar also concluded, based on his estimate of the amount of Rancho's likely initial investment, that Rancho was earning a return of 11.3 percent on its investment. Baar concluded it was "virtually certain" Rancho was earning a fair return under a standard based on initial investment in the property. Baar stated that Fabrikant, Rancho's expert, has concluded in prior cases that a 9 percent rate of return provides a fair return.

The arbitrator issued a detailed written statement of decision. He concluded Rancho had failed to meet its burden to prove by a preponderance of the evidence that the increase it sought was reasonable (see § 2.22.090, subd. (G)(1)). He concluded further, however, that a $60-per-month rent increase at each space in the park was necessary to provide Rancho with a fair rate of return. Rancho sought judicial review of the arbitrator's decision by filing a petition for writ of mandate under Code of Civil

4

Procedure section 1094.5 in the superior court. (See § 2.22.090, subd. (G)(5).) The court denied the petition.[2]

Rancho appeals, arguing that the denial of its full requested rent increase (to $625 per month) violated its rights under the California Constitution. Rancho does not raise any federal constitutional claims in this proceeding, having stated in the trial court and in its opening appellate brief that it is reserving any such claims for litigation in federal court under *England v. Louisiana State Bd. of Medical Examiners* (1964) 375 U.S. 411, 420–421 (*England*).[3]

## II. DISCUSSION

### A. Standard and Scope of Review

"An aggrieved party may seek judicial review of an administrative rent control decision by filing a petition for writ of mandate in the superior court. (Code. Civ. Proc., § 1094.5; [citation].) 'The inquiry in such a case shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not

---

[2] In addition to seeking relief in the superior court, Rancho filed a petition for a writ of administrative mandamus in federal district court. The district court dismissed Rancho's "regulatory" takings claim as unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* (1985) 473 U.S. 172, 194, and dismissed its "private" takings, substantive due process, and equal protection claims with prejudice. Rancho has appealed the district court's judgment of dismissal. (At City's request, we have taken judicial notice of certain documents filed in the federal proceeding.)

[3] City did not move to strike Rancho's *England* reservation, and this appeal presents no issue as to the propriety of that reservation or the effect it may have in any subsequent federal proceedings. (Compare *Colony Cove Properties, LLC v. City of Carson* (2013) 220 Cal.App.4th 840, 877-880 [reversing trial court orders striking *England* reservations] with *Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 646, 654-655 [upholding trial court decision to strike *England* reservation].)

5

supported by the evidence.' (Code Civ. Proc., § 1094.5, subd. (b).)" (*Besaro Mobile Home Park, LLC v. City of Fremont* (2012) 204 Cal.App.4th 345, 354 (*Besaro*).)

"In an appeal from a judgment denying the writ, we focus upon the decision of the rent control agency rather than the superior court, with the burden being on the appellant to prove the decision was unreasonable or unlawful. [Citations.] We uphold the agency's factual findings if supported by substantial evidence, indulging in the presumption that the record supports the agency's findings of fact. [Citation.] The interpretation of a rent control ordinance is a matter for our independent review, with deference given to the agency's interpretation. [Citation.] The constitutionality of an ordinance as applied is reviewed de novo when the underlying facts are undisputed." (*Besaro, supra,* 204 Cal.App.4th at p. 354.)

## B.     Rancho's State Constitutional Claims

On appeal, Rancho does not contend that the $60-per-month rent increase ordered by the arbitrator is insufficient to provide Rancho a fair return on its investment (whether determined by use of the NOI formula in the ordinance or by application of other factors, such as an estimate of Rancho's initial investment in the park). (See § 2.22.110, subds. (A), (C)(1), (F).) Instead, Rancho argues that, even if it is receiving a fair return on its investment, the denial of its full requested rent increase (to $625 per month at each space in the park) violated its rights under the due process, "takings" and equal protection clauses of the state Constitution. We reject these arguments.

In *Besaro*, a case involving similar constitutional claims by a mobile home park owner (represented by the same counsel who represents Rancho in this matter), our colleagues in Division Five explained: "A municipality may use its police powers to adopt a rent control ordinance when the provisions of that ordinance 'are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property.' (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [(*Birkenfeld*)].) 'In the context of price control, which includes rent control, courts generally find that a regulation bears "a reasonable relation to a proper legislative purpose" so long as the law does not deprive investors of a "fair return" and thereby

6

become "confiscatory." ' (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 771 (*Kavanau*).) The constitutionally protected right in this case is the right to receive a fair return on one's property. (*Hillsboro Properties v. City of Rohnert Park* (2006) 138 Cal.App.4th 379, 391 (*Hillsboro*).)" (*Besaro*, *supra*, 204 Cal.App.4th at p. 357.) We next apply this framework to Rancho's specific constitutional claims.

### 1.    Due Process

The due process clause of the California Constitution, which prohibits government from depriving a person of property without due process of law (Cal. Const., art. I, § 7), guarantees a mobile home park owner the right to a fair return. (*Kavanau, supra,* 16 Cal.4th at p. 771.) When considering whether a price regulation such as a rent control ordinance violates substantive due process, "a 'court must determine whether the [regulation] may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection for the relevant public interests, both existing and foreseeable.' " (*Id.* at p. 772.) The essential inquiry in evaluating a due process claim is "whether the regulatory scheme's *result* is just and reasonable"; to be constitutional, regulated rents must fall within a " 'broad zone of reasonableness.' " (*Id.* at pp. 778–779.) " 'Fair return is the constitutional measuring stick by which every rent control board decision is evaluated.' " (*Hillsboro, supra,* 138 Cal.App.4th at p. 391.)

As noted, Rancho does not contend the arbitrator's decision denied it a fair return on its investment. Rancho argues, however, that because the purpose of rent control is to prevent excessive rents, City may not constitutionally apply the ordinance to stop Rancho from charging $625 per month, a rate that Rancho contends is not excessive or the result of monopoly power. Rancho asserts that $625 per month is not excessive because it does not exceed the "market rent" (i.e., the amount a willing renter not currently protected by rent control would be willing to pay).

Like the *Besaro* court, we reject this circular argument, and we decline to hold a mobile home park owner has a due process right to charge any rent it could obtain in the marketplace in the absence of rent control. (See *Besaro*, *supra*, 204 Cal.App.4th at

7

p. 358.)  City enacted the ordinance because the unique circumstances of mobile home ownership created an imbalance between park owners and tenants, making mobile home owners captive to rent increases.  These circumstances include:  (1) the substantial investment mobile home owners have made in their mobile homes; (2) the shortage of vacant mobile home park spaces; and (3) the difficulty and expense of moving mobile homes.  (§ 2.22.010, subds. (B), (D); see *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1009–1010 (*Galland*); *Besaro*, *supra*, 204 Cal.App.4th at p. 358.)  "Due process is not offended by a rent control statute designed to protect tenants from asymmetries in bargaining power so long as the property owner can earn a fair return; to conclude otherwise would be to render most rent control statutes virtually meaningless."  (*Besaro*, *supra*, 204 Cal.App.4th at p. 358.)

Rancho suggests the conditions leading to the enactment of the ordinance no longer exist (or do not exist at the Rancho park), because (1) there was no evidence of above-market rents at the Rancho park, and the requested rate of $625 per month is not an excessive or above-market rent, (2) the evidence showed Rancho does not have "monopoly power in the overall housing market," (3) the monthly cost of purchasing a mobile home and renting a space is now lower than the cost of renting a comparable apartment, (4) Rancho has not sought to exploit an advantage in bargaining power resulting from a shortage of mobile home spaces, but has instead constructed several mobile home parks, and (5) there is no shortage of opportunities to reside in mobile homes in the relevant market.  Again, we agree with the *Besaro* court's conclusion that such arguments provide no basis for a finding of unconstitutionality.  " 'The notion that a court may invalidate legislation that it finds, after a trial, to have failed to live up to expectations, is indeed novel.  In our constitutional system, it is generally assumed that only the legislative body that enacted the statute may exercise a power of repeal if that statute fails to meet legislative expectations.'  (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 963–964 []; see also *id.* at pp. 957–960 [rejecting claim that rent control statute violated takings clause because it had not sufficiently benefitted the demographic groups it was designed to assist].)  '[W]ith rent control, as with most other

8

such social and economic legislation, we leave [it] to legislative bodies rather than the courts to evaluate whether the legislation has fallen so far short of its goals as to warrant repeal or amendment.' (19 Cal.4th at p. 974.)" (*Besaro*, *supra*, 204 Cal.App.4th at pp. 358–359.)

Rancho notes that, to comply with constitutional limitations, a rent control ordinance must (1) permit the adjustment of base rents to ensure they reflect general market conditions on the base date (see *Birkenfeld, supra,* 17 Cal.3d at p. 169; *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1414–1415 (*Concord*)), and (2) permit the adjustment of maximum rents over time (even if the base rent is not artificially low) to ensure the landlord continues to receive a fair return on its investment (see *Kavanau, supra,* 16 Cal.4th at p. 772; *Concord, supra,* 91 Cal.App.4th at pp. 1414–1415). This principle does not assist Rancho, because the ordinance authorizes (and Rancho has obtained) both types of adjustments. First, the ordinance allows a park owner to seek an adjustment to the base rent (§§ 2.22.040, subd. (B), 2.22.150), and Rancho obtained in 1995 a $50 upward adjustment in the base rent. Second, the ordinance allows periodic rent increases to ensure a park owner receives a fair return, authorizing park owners to take automatic annual increases and to request larger increases. (§§ 2.22.070, subds. (A), (C)-(E), 2.22.090, subd. (G), 2.22.110, subds. (A), (C), (F).) Rancho regularly took the automatic annual increase and, in the underlying administrative proceeding, obtained a larger increase of $60 per month, the amount the arbitrator deemed necessary to provide Rancho a fair return. Rancho is not constitutionally entitled to charge current market rates that exceed the amount necessary for a fair return. (See *Besaro*, *supra*, 204 Cal.App.4th at p. 361.)

Finally, Rancho contends the denial of its full requested rent increase is unconstitutional because that decision was not necessary to achieve the purposes underlying enactment of the ordinance. Rancho cites a portion of a passage from *Birkenfeld*, in which our Supreme Court stated: "[I]f it is apparent *from the face* of the [rent control] provisions that their effect will *necessarily* be to lower rents more than could reasonably be considered to be required for the measure's stated purpose, they are

9

unconstitutionally confiscatory." (*Birkenfeld, supra,* 17 Cal.3d at p. 165, italics added.) Because Rancho has disavowed any argument that the ordinance is facially unconstitutional, this passage provides no support for its position. Rancho has not presented authority establishing a landlord has a constitutional right to charge a rate higher than that necessary to provide a fair return, or a right to insist that every individual rent-setting decision taken pursuant to a valid ordinance must itself be essential to achieving the purposes that led to the ordinance's enactment. Rancho's true quarrel appears to be with the whole idea of rent control, not with how City administered its duly enacted rent control ordinance in this case.

### 2. Takings Clause

We reject Rancho's claim under the takings clause, which, like the due process clause, protects a property owner's right to earn a fair return on its investment. (*Hillsboro, supra,* 138 Cal.App.4th at p. 391; see *Galland, supra,* 24 Cal.4th at p. 1024 [price regulation causing confiscation can be "designated interchangeably" as either a taking or a violation of due process].) Our Supreme Court has explained: "When a regulation does not result in a physical invasion [of property] and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the 'factors' the high court discussed in *Penn Central* [*Transp. Co. v. New York City* (1978) 438 U.S. 104 (*Penn Central*)] and subsequent cases. *Penn Central* emphasized three factors in particular: (1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " (*Kavanau, supra,* 16 Cal.4th at p. 775.)

These factors do not support a conclusion that Rancho has suffered a taking. (See *Besaro*, *supra*, 204 Cal.App.4th at p. 359 [rejecting takings claim].) First, the ordinance has not had a confiscatory effect, because Rancho is earning a fair return on its investment. Second, application of the ordinance does not violate Rancho's expectation of the right to use its property in a manner yielding a fair return. Rancho "cannot claim a 'reasonable' expectation in greater profits in light of the [o]rdinance itself and the heavily

10

regulated nature of mobilehome occupancy. (See, e.g., Health & Saf. Code, § 18000 et seq.; Civ. Code, § 798 et seq.)" (*Besaro*, *supra*, 204 Cal.App.4th at p. 359.) Although Rancho argues it developed the park prior to the enactment of rent control, this does not establish it could reasonably expect to charge, indefinitely, a rate higher than that necessary to provide a fair return. We decline to hold that a landlord whose building or park existed before the enactment of rent control necessarily suffers a taking when rent control is implemented. Every reasonable and realistic investor knows that conditions affecting valuation not only may change but will after the point of initial purchase. The takings clause provides no refuge from that reality whenever some form of governmental action—short of confiscation, and otherwise constitutional—brings about a post-investment change in such conditions. Third, City's decision to enact the ordinance "serves a legitimate government purpose of protecting renters in a captive market from excessive rent increases." (*Besaro*, *supra*, 204 Cal.App.4th at p. 359.) None of these factors supports a conclusion that Rancho has suffered a "taking," whether denominated a "private" taking or a "regulatory" taking.

### 3.    Equal Protection

Rancho contends the arbitrator's decision violates equal protection principles because City has regulated rents at mobile home parks, but has not regulated the rents or prices charged by other businesses. We disagree.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) Rancho has not shown mobile home park owners are similarly situated to other landlords (or other business owners) for purposes of rent regulation. As discussed above, City enacted the ordinance because the unique circumstances of mobile home ownership—including the substantial investment mobile home owners have made in their mobile homes, a shortage of vacant mobile home park spaces, and the difficulty and

11

expense of moving mobile homes—created an imbalance between park owners and tenants, making mobile home owners captive to rent increases. (§ 2.22.010, subds. (B), (D); see *Galland, supra,* 24 Cal.4th at pp. 1009–1010; *Besaro*, *supra*, 204 Cal.App.4th at p. 358.) Because mobile home park owners are not similarly situated to other landlords or business owners for purposes of rent regulation, neither City's decision to enact mobile home rent control nor the arbitrator's application of the ordinance violated Rancho's equal protection rights.[4]

### III. DISPOSITION

The judgment of the superior court (order denying petition for writ of mandate under Code of Civil Procedure section 1094.5) is affirmed. City shall recover its costs on appeal.

_____
Streeter, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

---

[4] Because the arbitrator's decision did not violate Rancho's state constitutional rights, we need not address Rancho's argument that the trial court erred in determining the appropriate remedy for any such violation.